RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0437p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

        No. 07-6201

GHASSAN HAJ-HAMED,

        *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 05-00078—William O. Bertelsman, District Judge.

Argued: October 28, 2008

Decided and Filed: December 3, 2008

Before: SILER and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[*]

---

## COUNSEL

**ARGUED:** Henry Louis Sirkin, SIRKIN, PINALES & SCHWARTZ, Cincinnati, Ohio, for Appellant. John Patrick Grant, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Henry Louis Sirkin, Scott Ryan Nazzarine, SIRKIN, PINALES & SCHWARTZ, Cincinnati, Ohio, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

---

## OPINION

---

McKEAGUE, Circuit Judge. Ghassan Haj-Hamed, M.D., pleaded guilty to one count of distributing prescription drugs without a legitimate medical purpose. The district court sentenced him to twenty-seven months of imprisonment, the bottom of the range calculated under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). Dr. Haj-Hamed appeals his sentence. Finding his sentence procedurally and substantively reasonable, we affirm.

---

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I

The facts of the case are undisputed:  Dr. Haj-Hamed owned and operated several medical clinics in the Cincinnati-Northern Kentucky area from 1999 through 2002.  After receiving complaints that Dr. Haj-Hamed prescribed controlled substances without valid medical reasons, law-enforcement agents conducted surveillance of one of his clinics and made undercover visits to the clinic posing as patients.

The investigation revealed that Dr. Haj-Hamed routinely spoke to patients for a minute or so without conducting any meaningful physical examination.  He then prescribed frequently abused controlled substances to the patients in exchange for cash payments.  A confidential source told agents that Dr. Haj-Hamed referred to himself as "Dr. Feel Good."  Others considered him an easy source of oxycontin and other controlled substances.  He told patients to fill their prescriptions in Ohio or Indiana so as to avoid Kentucky's electronic prescription-tracking system.

A federal grand jury indicted Dr. Haj-Hamed on twenty-two counts of distributing prescription drugs without a legitimate medical purpose.  On the morning that his federal trial was scheduled to begin, Dr. Haj-Hamed pleaded guilty to Count Six, to wit,

> From on or about December, 2001 through on or about March, 2002, in Pendleton County, in the Eastern District of Kentucky, and elsewhere,
>
> GHASSAN HAJ-HAMED
>
> did knowingly and intentionally distribute and dispense a mixture or substance containing oxycodone, a Schedule II controlled substance, a mixture or substance containing hydrocodone, a Schedule III controlled substance, and a mixture or substance containing diazepam, a Schedule IV controlled substance, to Mike Granger, without a legitimate medical purpose and outside the usual course of medical practice, all in violation of 21 U.S.C. § 841(a)(1).

In exchange for his guilty plea, the Government dismissed the remaining counts against him.  The parties also agreed to limit the relevant conduct for sentencing purposes to that occurring from October 2000 to September 2002.

The probation office prepared an initial Presentence Report ("PSR") using the 2001 edition of the Guidelines manual.  Dr. Haj-Hamed had a number of objections to that PSR.  The probation office revised its PSR in light of those objections.  With a base-offense level of twenty less a two-point reduction for acceptance of responsibility, the probation office calculated Dr. Haj-Hamed's adjusted offense level at eighteen.  With a criminal history category of I, the office determined a Guidelines range for imprisonment of twenty-seven to thirty-three months.

During the sentencing hearing, the district court asked if Dr. Haj-Hamed had any objections to the final PSR that were not already reflected in that report.  He indicated that he did not, and he further acknowledged the correctness of the probation office's calculation of the Guidelines range.

Dr. Haj-Hamed sought a downward departure under the Guidelines or, in the alternative, a downward variance from the applicable range.  In support of a more lenient sentence, he relied principally on his family circumstances.  At the time of sentencing, Dr. Haj-Hamed was married with eight children.  His wife was principally a homemaker, had attained only the equivalent of a seventh-grade education, and did not have strong English-language skills.  Three of the children were step-children from his wife's previous marriage to Dr. Haj-Hamed's brother, who had died years before in an automobile accident.  The three step-children ranged in age from twenty-one to twenty-five.  Since their marriage, the couple had five additional children who ranged in age from

five to fifteen. Three of these children had developmental problems. All three were hearing-impaired to varying degrees and used sign-language interpreters at school. One of the three also suffered from significant learning delays as well as congenital cardiac problems, and another had operations on her hands and feet to remove extra fingers and toes. Based on this, Dr. Haj-Hamed argued that his family needed him for emotional, financial, and medical support.

In addition, Dr. Haj-Hamed claimed that his crime was not a typical drug-distribution crime. He argued, rather, that he simply spread himself too thin managing and practicing medicine at his several clinics. As argued by his attorney at sentencing, "Combined with his desire to aid others, his naiveté in certain matters, his different cultural background, and his difficulty in refusing persons who ask for his help, Dr. Haj-Hamed's carelessness caused him to fail to exercise the required proper care and due diligence on his patients." Sent. mem. at 9. Finally, he noted that he had already incurred significant financial penalties as a result of his criminal actions in the form of back taxes, penalties and interest.

The Government opposed a sentence below the Guidelines range. It argued that Dr. Haj-Hamed was a respected member of society who had abused society's trust for a simple purpose: to make money. Thus, a Guidelines sentence was justified, in the Government's opinion. The district court agreed and sentenced him to twenty-seven months of imprisonment.

Dr. Haj-Hamed appealed his sentence.

## II

### A.    Appellate Review of Sentence

"Sentences imposed post-*Booker* are reviewed for procedural and substantive reasonableness." *United States v. Conatser*, 514 F.3d 508, 519 (6th Cir. 2008) (citing *United States v. Booker*, 543 U.S. 220, 261 (2005); *United States v. Williams*, 432 F.3d 621, 623 (6th Cir. 2005)). We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). If procedurally sound, we then review the sentence for substantive reasonableness under an abuse-of-discretion standard. *Id.* at 598; *see also Rita v. United States*, 127 S. Ct. 2456, 2465 (2007).

### B.    Procedural Reasonableness

Dr. Haj-Hamed argues that the district court failed to consider the relevant § 3553(a) factors and failed to explain adequately the sentence imposed. These are attacks on the procedural reasonableness of the district court's sentence.

We must first determine what standard to apply to Dr. Haj-Hamed's procedural-reasonableness challenge. Although he raises on appeal the same substantive arguments for a lower sentence that he presented to the district court, he did not argue below that the district court had made any procedural errors during sentencing. Near the end of the sentencing hearing, the district court asked the parties whether there were any further matters to resolve that had not yet been addressed, in accordance with this court's holding in *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). The Defendant failed to raise any objection related to the district court's consideration of the § 3553(a) factors or its explanation of the sentence. Accordingly, we would normally review Dr. Haj-Hamed's procedural challenge for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir.) (en banc), *cert. denied*, 129 S. Ct. 68 (2008). However, at oral argument, the Government disclaimed any reliance on a plain-error analysis.

Regardless of whether we review the procedural reasonableness of the sentence under an abuse-of-discretion standard or a plain-error standard, the result is the same—the district court did not err in the procedures it followed during sentencing. As Dr. Haj-Hamed concedes, the district court properly calculated the applicable Guidelines range. It is also undisputed that the district court explained to him the advisory nature of the Guidelines during the plea hearing. The district court discussed during sentencing how the parsimony provision of § 3553 applied to Dr. Haj-Hamed's sentence and went through the relevant § 3553(a) factors.[1] Dr. Haj-Hamed maintains that the district court failed to consider his history and characteristics pursuant to § 3553(a)(1). Yet, the final PSR contained all of the unfortunate circumstances facing the family as well as Dr. Haj-Hamed's background and criminal activity, and the district court explained that it had carefully studied that report. The district court acknowledged that Dr. Haj-Hamed's "family circumstances" was the primary argument for a downward variance. The district court discussed his family circumstances at various points during the hearing. Thus, it is clear that the district court was aware of and considered the doctor's history and circumstances.

Moreover, the district court adequately explained why it selected a sentence at the bottom of the Guidelines range. As the Supreme Court and this court have explained, a district court will not normally need to provide a lengthy explanation of a within-Guidelines sentence. *Rita*, 127 S. Ct. at 2468 ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation."); *United States v. Gale*, 468 F.3d 929, 940-41 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 3065 (2007).

Here, the district court noted that the Defendant had already received a considerable break when the Government agreed to dismiss twenty-one of the twenty-two counts against him and agreed to restrict the relevant criminal conduct. The district court explained that this was the main factor in its analysis. Had Dr. Haj-Hamed been convicted on all of the counts, he could have faced considerably more time in prison.

The district court went on to find that Dr. Haj-Hamed breached the trust given to him as a physician by selling prescriptions "to the most vulnerable in our population," sent. tr. at 15, "for his own profit," *id.* at 16. The district court explained that the breach of trust weighed in favor of imprisonment under both the "nature and circumstances of the offense" factor (§ 3553(a)(1)) as well as the "seriousness of the offense" factor (§ 3553(a)(2)(A)). The district court further explained that white-collar crimes like this one required imprisonment so as to deter other professionals from engaging in similar criminal activity (§ 3553(a)(2)(B)).

While Dr. Haj-Hamed contends that the district court should have discussed certain matters more in-depth and placed greater weight on other aspects, it is evident that the district court did not fail to explain why it gave him the sentence it did, which is all it was required to do. *See Gale*, 468 F.3d at 940 ("When a district court adequately explains *why* it imposed a particular sentence, especially one within the advisory Guidelines range, we do not further require that it exhaustively explain the obverse—*why* an alternative sentence was *not* selected—in every instance." (emphasis in original)). It is clear, rather, that Dr. Haj-Hamed's primary argument is that the district court did not give sufficient weight to his arguments for mitigation. This calls into question the substantive reasonableness of the sentence, which we consider next.

---

[1]As there were no co-defendants nor any specific victims, the district court did not discuss the factors in § 3553(a)(6) or (7). Nor did the district court identify any pertinent statement issued by the Sentencing Commission under § 3553(a)(5). Dr. Haj-Hamed raises no claim of error with respect to any of these factors.

## C.    Substantive Reasonableness

"A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Conatser*, 514 F.3d at 520 (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). The applicable Guidelines range represents the starting point for substantive-reasonableness review because it is one of the § 3553(a) factors and because the Guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors. *Gall*, 128 S. Ct. at 596. While a district court may not presume that the range is reasonable, *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006), a properly calculated within-Guidelines sentence will be afforded a rebuttable presumption of reasonableness on appeal, *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 3043 (2007); *see also Rita*, 127 S. Ct. at 2462.

The presumption applies if the district court acknowledged that the Guidelines are advisory, discussed the relevant § 3553(a) factors, explained its reasons for imposing a within-Guidelines sentence, and did not act arbitrarily or rely on impermissible factors. *United States v. Madden*, 515 F.3d 601, 613 (6th Cir. 2008). As noted above, the district court acknowledged the advisory nature of the Guidelines; discussed the relevant sentencing factors; and explained its reasons for imposing a within-Guidelines sentence. The Defendant has not argued, and there is nothing in the record to suggest, that the district court acted arbitrarily.

Dr. Haj-Hamed does argue, however, that the district court relied upon an impermissible factor, unproven relevant conduct. Specifically, he contends that the district court erred when it found that he had received consideration for his family circumstances as part of the plea deal to dismiss twenty-one of the twenty-two criminal counts. He points out that the Government did not put on any separate evidence of relevant conduct during the sentencing hearing, and, thus, the only relevant conduct that should have been considered for sentencing was that conduct included in the final PSR.

In general, a district court can consider uncharged or dismissed conduct for sentencing purposes. *United States v. Mendez*, 498 F.3d 423, 426-27 (6th Cir. 2007). In order to do so, the district court must make findings by a preponderance of the evidence before it. *United States v. Wittingen*, 519 F.3d 633, 636-39 (6th Cir. 2008). Here, Dr. Haj-Hamed is correct that the Government did not call any witnesses or submit any written evidence to broaden the factual record beyond the unobjected facts set forth in the final PSR. Yet, Dr. Haj-Hamed mischaracterizes what the district court did in this instance. It did not purport to make factual findings with respect to the twenty-one dismissed counts. Instead, the district court commented on an uncontested aspect of the parties' plea agreement—that one basis for the Government's decision to dismiss all but one of the counts and to narrow the relevant conduct was concern for Dr. Haj-Hamed's family circumstances.

Dr. Haj-Hamed has not identified any decision, nor are we aware of any decision holding that a sentencing court is precluded from considering an uncontested aspect of a plea agreement when going through the factors of § 3553(a). It is clear that had the Government expressly stated in writing or during the plea hearing that one basis for the reduction in charges and relevant conduct was the hardship to the doctor's family, the district court could have considered that when crafting an appropriate sentence. *Cf. Webb*, 403 F.3d at 382 (stating that a defendant "merely received what he had bargained for" when sentenced in accordance with terms of a plea agreement). While there was nothing stated during the plea hearing about Dr. Haj-Hamed's family, this court has previously looked to the "broader 'context and record'" of the criminal proceedings when considering whether a sentence was reasonable. *Madden*, 515 F.3d at 611. It is clear from the record that the parties and

the district court discussed the matter before sentencing.**2**  The district court believed that the Government consented to the plea agreement in part out of consideration for the Defendant's family; when given an opportunity to object at the end of the sentencing hearing, defense counsel offered nothing to draw this belief into question.

What the district court did here, in essence, was to find that the parties' plea agreement resulted in a Guidelines range which sufficiently took into consideration the Defendant's unfortunate family circumstances.  The district court need not go on and address all of the doctor's family circumstances in detail or give additional weight to them. *See Rita*, 127 S. Ct. at 2464 (noting that the Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice"); *id.* at 2468 ("Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence . . . .").  Accordingly, Dr. Haj-Hamed has not shown that the district court relied upon an impermissible factor and, thus, a presumption of reasonableness applies to the within-Guidelines sentence.

Dr. Haj-Hamed next tries to rebut the presumption.  As with his procedural challenge, the doctor relies principally on his family circumstances.  In general, though, district courts are discouraged from departing or varying from the Guidelines because of family circumstances.  As explained in *United States v. Carter*, the Sentencing Commission has issued a general policy statement regarding the relevance of family circumstances to sentencing determinations. 510 F.3d 593, 602 (6th Cir. 2007) (citing 18 U.S.C. § 3553(a)(5); U.S.S.G. § 5H1.6).  Courts are discouraged from reducing a defendant's sentence based on family circumstances unless those circumstances rise to the level of "exceptional." U.S.S.G. § 5H1.6.

It is correct that, "post-*Booker*, a district court may vary a sentence to account for a factor discouraged by the Sentencing Commission." *Carter*, 510 F.3d at 602.  However, "the totality of the circumstances" do not favor Dr. Haj-Hamed's appeal for a sentence below the Guidelines range. *Id.* As explained above, the district court determined that Dr. Haj-Hamed had already received significant consideration for his family when the Government agreed to dismiss all but one of the criminal counts, saving him from a potentially much longer term of imprisonment.

Dr. Haj-Hamed directs our attention to *United States v. Husein*, 478 F.3d 318 (6th Cir. 2007). In that case, the district court granted the defendant a downward departure from the advisory Guidelines range based on her family circumstances.  The defendant's father relied upon around-the-clock healthcare from the defendant and the defendant's mother.  Moreover, the defendant and her mother were the sole sources of financial support for the family, which included several minor siblings, and only the defendant had a valid driver's license.  Finding "that there [was] no one else available to fill Defendant's role if she were incarcerated," the district court gave her a noncustodial sentence on her drug-distribution charge. *Id.* at 324.  On the government's appeal, this court affirmed.  In doing so, the court relied heavily on the discretion given to district courts to fashion an appropriate sentence under § 3553.  The court explained that it might have come to a different conclusion had the sentence been before it de novo. *Id.* at 328.  But, under the abuse-of-discretion standard, the court "defer[red] to the district court, which possesses a 'special competence' because of its 'vantage point and day-to-day experience in criminal sentencing' to determine whether the facts are sufficiently extraordinary to warrant a departure.'" *Id.* (quoting *Koon v. United States*, 518 U.S. 81, 98, 99 (1996)).  Similarly, in *United States v. Baker*, the court affirmed a district court's downward variance, concluding that there was little to distinguish the case from *Husein*. 502 F.3d

---

**2**"THE COURT: All right.  We had the discussion when we were in chambers and we discussed this [i.e., Dr. Haj-Hamed's reasons for a lesser sentence] with the probation officer.  It was my understanding that the relevant conduct has already been adjusted to give him a substantial break for these family factors. . . .  I've carefully studied the Presentence Report and listened to the remarks of counsel, both here and essentially the same thing in chambers, with everybody present, I hasten to add." Sent. tr. at 13-14.

465, 469 (6th Cir. 2007). The principle underlying both *Husein* and *Baker*, thus, is that an appellate court should generally defer to the "special competence" of the district court in determining whether family circumstances are so extraordinary as to justify a departure or a variance from a Guidelines sentence.

There is little doubt that Dr. Haj-Hamed's imprisonment will impose a hardship on his family. The district court did not abuse its discretion, however, when it concluded that the dismissal of twenty-one of his twenty-two counts adequately alleviated the much greater hardship that could have been imposed. *See Carter*, 510 F.3d at 602.

Dr. Haj-Hamed also argues that other circumstances justified a lesser sentence. Before the district court, he characterized his crime as one primarily of omission—his resources were stretched too thin and, through a lack of oversight and management, he began to cut corners in his pain-management practice. He also noted that his medical licenses were either suspended or revoked, and that he already incurred significant financial penalties flowing from his criminal activity.

Yet, the district court clearly disagreed with the Defendant's rather benign gloss on his criminal activity. Instead, the district court placed the blame squarely on the Defendant's short-sighted greed for more money. The district court noted that the doctor preyed on the weaknesses of those patients who could least avoid the temptations of drugs, thereby abusing society's trust in him as a physician. Because of this, and in order to deter other physicians who might be tempted to engage in similar activity, the district court concluded that imprisonment was warranted. Finally, the district court declined to impose a penalty (the maximum it could have imposed was $1 million) because of Dr. Haj-Hamed's strained resources. While Dr. Haj-Hamed has offered several mitigating factors for a lesser sentence, he has simply failed to show that the district court erred by placing greater emphasis on the nature of the doctor's crime and the need to deter future criminal activity by similar professionals. As he has not established "that the district court made sufficient errors in applying (or failing to apply)" the non-Guidelines sentencing factors, we affirm his within-Guidelines sentence. *Gale*, 468 F.3d at 937.

## D.     Motion for Downward Departure

"[A] district court's decision to deny a downward departure is unreviewable unless the lower court incorrectly believed that it lacked the authority to grant such a departure." *Madden*, 515 F.3d at 610; *see also Carter*, 510 F.3d at 600 ("[T]his court has no discretion to review the district court's denial of the downward departure."). The district court denied Dr. Haj-Hamed's request for a downward departure on the merits, not because of an erroneous belief that it lacked the authority to grant such relief. Dr. Haj-Hamed acknowledges this on appeal, and raises the matter only to preserve it for possible further appellate review.

## III

For the reasons provided above, we AFFIRM Dr. Haj-Hamed's sentence.