**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0585n.06

No. 09-5632

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Sep 02, 2010**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOAQUIN LAFARGA,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

BEFORE: GUY, MOORE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Joaquin Lafarga challenges the procedural and substantive reasonableness of his within-Guidelines sentence of seventy-seven months of imprisonment imposed following his plea of guilty to one count of unlawful reentry after deportation after an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). We affirm.

I.

Defendant Lafarga was arrested on May 30, 2008, following a routine stop for a traffic violation in Louisville, Kentucky, when officers ascertained that Lafarga, a Mexican national, had been deported in April 2005 and that he had a criminal record. Nothing in the computer check indicated that Lafarga had obtained permission from the Secretary of the Department of Homeland Security to re-enter the United States. In fact, Lafarga has been deported from this country on three

occasions: in January 1995, December 1996, and April 2005. His criminal history includes two 1980 felony convictions in California for assault by means of force likely to produce great bodily injury and assault with a deadly weapon; four California misdemeanor convictions stemming from arrests in 1984, 1985, 1986, and 1987 for illegal possession or use of controlled substances; 1994 felony convictions for counterfeiting access cards and possession of a firearm by a felon; in 1995, six felony counts of credit card theft with intent to defraud; a 1997 Colorado felony conviction for possession of methamphetamine; and, 1997 felony convictions in Colorado for vehicular eluding and being a habitual criminal.

Lafarga was indicted on one count of unlawful reentry after deportation after an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). On February 11, 2009, he entered a guilty plea, without a plea agreement, to the charge.

The Presentence Investigation Report ("PSR"), which was adopted in full by the district court, increased Lafarga's base offense level of 8 to an adjusted offense level of 24 pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2008), which provides that

> [i]f the defendant previously was deported, or unlawfully remained in the United States, after — (A) a conviction for a felony that is . . . (ii) a crime of violence; . . . increase by **16** levels[.]

This enhancement was triggered by Lafarga's 1980 felony assault convictions. The adjusted offense level was reduced by 3 levels for acceptance of responsibility and thus produced a total offense level of 21. With a criminal history category of VI, the resultant advisory Guidelines range

was 77 to 96 months of imprisonment. Neither party objected to the determination of the offense level and criminal history category.

At the sentencing hearing held on May 11, 2009, defense counsel moved for a downward variance and urged the court to impose a maximum sentence of 33 months, based upon three grounds: (1) the remoteness of the 1980 felony assault convictions used to enhance Lafarga's sentence; (2) the sentencing disparity created by the fact that Lafarga's prosecution under 8 U.S.C. § 1326 would have been "fast tracked" in other federal jurisdictions, resulting in a more lenient sentence;[1] and (3) Lafarga's family circumstances, including his children's status as United States citizens and his son's service in the United States Army. The district court, however, denied the motion and sentenced Lafarga at the bottom of the recommended Guidelines range to 77 months of incarceration, to be followed by a three-year term of supervised release. Lafarga now timely appeals his sentence.

## II.

Lafarga first contends that, although there is no dispute that the Guidelines were correctly calculated and the district court appropriately considered them to be advisory, the court "paid only lip service to consideration of the factors listed in 18 U.S.C. § 3553(a)" and, therefore, his sentence is procedurally unreasonable. Specifically, Lafarga maintains that the court did not address his

---

[1]*See generally, United States v. Hernandez-Fierros*, 453 F.3d 309, 313-14 (6th Cir. 2006) (discussing the issue of fast-track sentencing disparity); *United States v. Carballo-Arguelles*, 267 F. App'x 416, 420 (6th Cir. 2008) (unpublished); *United States v. Saavedra-Ibanez*, 247 F. App'x 724, 729 (6th Cir. 2007) (unpublished).

primary arguments for a below-Guidelines sentence, namely, the disparity presented by "fast-track"

sentencing and his family situation.

"'Courts of appeals must review all sentences [for reasonableness] . . . under a deferential

abuse-of-discretion standard.'" *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010) (quoting

*Gall v. United States*, 552 U.S. 38, 41 (2007)). "Where a party has failed to object to a procedural

defect, we review claims of procedural unreasonableness for plain error." *Wallace*, 597 F.3d at 802

(citing *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc)). Lafarga, in

response to the district court's *Bostic*[2] inquiry, did not object to any procedural deficiencies at the

sentencing hearing; consequently, we will apply the plain-error standard to his procedural challenge.

*See United States v. Haj-Hamed*, 549 F.3d 1020, 1024 (6th Cir. 2008) (holding that plain error

review is appropriate where "[a]lthough [the defendant] raises on appeal the same substantive

arguments for a lower sentence that he presented to the district court, he did not argue below that the

district court had made any procedural errors during sentencing."). "To show plain error, a defendant

must show (1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and

(4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Wallace*,

597 F.3d at 802. A finding of plain error is warranted only in "exceptional circumstances," that is,

"where the error is so plain that the trial judge . . . [was] derelict in countenancing it." *Vonner*, 516

F.3d at 386 (citation and internal quotation marks omitted).

---

[2]*United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004).

We must "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.'" *Haj-Hamed*, 549 F.3d at 1023-24 (quoting *Gall*, 552 U.S. at 51). A district court "need not recite the[] [§ 3553(a)] factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *Hernandez-Fierros*, 453 F.3d at 312 (citation and internal quotation marks omitted). "When a district court adequately explains *why* it imposed a particular sentence, especially one within the advisory Guidelines range, we do not further require that it exhaustively explain the obverse – *why* an alternative sentence was *not* selected – in every instance." *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006); *see also Wallace*, 597 F.3d at 804 ("It is well-settled that a district judge need not give the reasons for rejecting any and all arguments by the parties for alternative sentences, nor must [he] give the specific reason for a within-guidelines sentence.") (citation and internal quotation marks omitted). "[T]he crucial question is whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *Wallace*, 597 F.3d at 804 (citations and internal quotation marks omitted).

We find no procedural deficiencies in the present sentencing record that rise to the level of plain error. Although the district court did not expressly address all of Lafarga's arguments for a

downward variance – in particular, the issue of a sentencing disparity – it is evident that the court

carefully considered Lafarga's request, and the government's response that a downward departure

would be inappropriate in light of Lafarga's extensive criminal history, before imposing the sentence.

The court acknowledged on the record that it had read defense counsel's sentencing memorandum

but, after listening to a reiteration of these same arguments at the hearing, it simply was not

persuaded to grant a variance:

> I've looked at this. If it was simply a case of whatever his criminal history – his offense level was and then basically no other offenses and we were reaching back to 1980, then it would be sort of all on one side of the ledger, so to speak. Looking at this whole case, it seems to be mixed at best for him. To be sure, we are going back to 1980 on this offense that significantly raises his offense level, but that's specifically allowed [by U.S.S.G. § 2L1.2(b)(1)(A)(ii)]. I think I could find a way around that, but I mean, he has a significant record in addition to that, and that was the other question I had. He's not really being penalized in the direct sentencing for the fact that this is the third time, and even though . . . the other crimes he's been convicted of, even though independently they don't result in the same consequence, that is, increasing his sentence directly by operation of the sentencing guidelines, they are pretty significant. Here's a guy who is repeatedly coming into the country uninvited . . . and then committing crimes, and not sort of incidental crimes, some of them . . . are pretty serious.

> * * *

> I read [defendant's sentencing] memorandum, and I understand all that. I just think that given his – it's true that none of the other crimes specifically fit into that category, but they are still – some of them are pretty serious. Some of them are admittedly minor and don't affect the sentencing, but some of them are very serious, and he's going to be deported anyway. The fact that he has relatives here is not a consequence one way or another. I don't think we can avoid the fact he's going to be sent back. Maybe a delay could work to his benefit actually. I know he probably won't look at it that way.

> But given all the factors, I'm going to deny the motion. I think the equities don't weigh in his favor when looking at the total situation.

After Lafarga addressed the court and discussed his goal of becoming an artist, his depression, his family situation, and his life in Mexico, the court responded:

> I understand that, Mr. Lafarga. You'll have to figure out how to pursue that [work as an artist] in Mexico. It's a difficult situation, but I think you understand you've come into the country illegally numerous times and have then committed crimes, and that puts you into a difficult position with the Court in being able to deal with your situation in a way that would be – give you other opportunities and be more lenient. That's just the reality of your circumstances.

The court ultimately imposed the sentence of 77 months after noting that "I have considered the advisory guidelines and 18 [U.S.C. §] 3553(a)." The court added, "For all of the reasons previously stated on the record, the Court finds that the sentence is . . . within the guideline range, and meets all other sentencing objectives."

While the dissent relies extensively, and nearly exclusively, on *Wallace*, the present case is factually distinguishable. Here, unlike *Wallace*, the district judge during the sentencing proceedings referenced defendant's sentencing memorandum that expressly analyzed, inter alia, the fast-track issue, but rejected defendant's arguments. Thereafter, the district court imposed a within-Guidelines sentence of 77 months. For the present case, the authority most instructive regarding whether plain error occurred is *United States v. Vonner*.

In *Vonner*, our en banc court held that when a sentencing court imposes a within-Guidelines sentence, its failure to explain its rejection of a straightforward, nonfrivolous leniency argument does not amount to plain error:

> At the sentencing hearing, Vonner asked for a downward variance on four grounds: (1) his "neglect[ed]" and "abus[ive]" childhood; (2) his 14-month presentence confinement; (3) his "assistance to the Government"; and (4) the circumstances

surrounding his cocaine sales. The court told Vonner, among other things, that it "appreciate[d] the apology [he] offered this morning," and it "encouraged" him to continue to cooperate with the government and to dedicate his prison time to learning "certain life skills and lifestyles that will be of benefit to [him] when [his] period of incarceration is over." It then said that it had "considered the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory Guidelines range, as well as the other factors listed in 18 [U.S.C. § ] 3553(a)," and imposed a 117-month sentence.

No one would call this explanation ideal. It did not specifically address all of Vonner's arguments for leniency, and it thus failed to ensure that the defendant, the public and, if necessary, the court of appeals understood why the trial court picked the sentence it did. Whether through an oral sentencing decision or a written sentencing memorandum, a trial court would do well to say more – not because it necessarily must on pain of reversal but because a court is more likely to advance the goals of sentencing if it clearly explains to the defendant why the court denied his request for leniency. *See Rita v. United States*, [551 U.S. 338, 357] (2007) ("[O]ften at sentencing a judge will speak at length to a defendant, and this practice may indeed serve a salutary purpose."). A district court's thorough explanation also "can provide relevant information to both the court of appeals and ultimately to the Sentencing Commission," which will facilitate appellate review and will "help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw." *Id.* at 2469.

* * *

Whether the court's brief explanation for this sentence sufficed or not, any potential error was not "plain." Although Congress requires a court to give "the reasons" for its sentence, 18 U.S.C. § 3553(c), *it does not say that courts must give the reasons for rejecting any and all arguments by the parties for alternative sentences.* The statute also distinguishes between within-guidelines sentences like this one and outside-guidelines sentences, requiring judges to give "the specific reason" for imposing an outside-guidelines sentence, 18 U.S.C. § 3553(c)(2), but imposing no similar requirement for within-guidelines sentences [under § 3553(c)(1)].

*Vonner*, 516 F.3d at 386-87 (emphasis added) (first and second alterations in original, third alteration

added).

Here, the court was clearly aware of its authority to depart downward but declined to do so. On the basis of this record, Lafarga's procedural challenge is without merit.

III.

"If procedurally sound, we then review the sentence for substantive reasonableness under an abuse-of-discretion standard." *Haj-Hamed,* 549 F.3d at 1024. "[A] sentence is substantively unreasonable if it is selected arbitrarily, if it is based on impermissible factors, if it fails to consider a relevant sentencing factor, or if it gives an unreasonable amount of weight to any pertinent factor." *United States v. Rosenbaum*, 585 F.3d 259, 267 (6th Cir. 2009). "[A] sentence within a properly calculated Guidelines range is presumed to be reasonable." *Id*.

Lafarga maintains that his sentence is substantively unreasonable because the district court accorded undue weight to his remote 1980 assault convictions that triggered the 16-level Guidelines enhancement. He also argues that his criminal history category overstates the seriousness of his criminal record, characterizing several of his prior convictions as "too remote" and "not on a par with the assault conviction[s] in terms of violence."

"[I]n appropriate cases . . . a district court may conclude that the criminal history category overstates the severity of the defendant's criminal history or that a lower sentence would still comply with and serve the mandates of section 3553(a)." *United States v. Collington*, 461 F.3d 805, 808-09 (6th Cir. 2006) (citation and internal quotation marks omitted). In such circumstances, "a district court may look beneath the specific criminal history score and advisory guideline calculation to reach the appropriate sentence." *Id*. at 809 (citation and internal quotation marks omitted).

This is certainly not the case here. The district court did not give unreasonable weight to Lafarga's 1980 convictions; it simply applied the relevant Guideline, U.S.S.G. § 2L1.2(b)(1)(A)(ii), affected by the convictions. Indeed, given Lafarga's extensive and serious prior record and his repeated deportations, the court would have been remiss if it had downplayed the significance of Lafarga's criminal history.

To the extent Lafarga contends that the district court did not give sufficient weight to his grounds for a downward variance, this, too, implicates the substantive reasonableness of his sentence. *Haj-Hamed*, 549 F.3d at 1025.

"Courts are discouraged from reducing a defendant's sentence based on family circumstances unless those circumstances rise to the level of 'exceptional.'" *Id*. at 1027 (quoting U.S.S.G. § 5H1.6). "[A]n appellate court should generally defer to the 'special competence' of the district court in determining whether family circumstances are so extraordinary as to justify a departure or a variance from a Guidelines sentence." *Id*. at 1028. The district court did not abuse its discretion in finding that Lafarga's family circumstances were unexceptional and did not provide a ground for mitigation.

Moreover, "[u]nder 18 U.S.C. § 3553(a), the need to avoid sentencing disparity is only one of the factors that a district court should consider in determining an appropriate sentence." *Hernandez-Fierros*, 453 F.3d at 313. The present circumstances are analogous to those in *United States v. Cordova*, No. 08-2416, 2010 WL 1488912 (6th Cir. April 15, 2010), in which we explained:

> [R]egardless of whether district courts are permitted to vary based on the fast-track disparity, district courts are certainly not required to do so. *United States v. Hernandez-Fierros*, 453 F.3d 309, 314 (6th Cir. 2006); *see also United States v. Perez-Vasquez*, 570 F.3d 692, 696 (6th Cir. 2009) (reaffirming *Hernandez-Fierros* post-*Kimbrough* [*v. United States*, 552 U.S. 85 (2007)]). This circuit has previously explained that "fast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts" and the fast-track program therefore "does not run counter to § 3553(a)'s instruction to avoid unnecessary sentencing disparities." *Hernandez-Fierros*, 453 F.3d at 314. [Defendant] does not present any argument as to why fast-track variance is required in his case in particular. Therefore, our clear precedent that such variances are not required in every case is a sufficient basis on which to reject his argument that he was entitled to such a variance.

*Cordova*, 2010 WL 1488912, at \*2.

Here, the district court "did not ignore the factors [Lafarga] complains did not receive enough emphasis; it merely weighed them against the other listed factors and sentenced [Lafarga] accordingly." *United States v. Lay*, 583 F.3d 436, 450 (6th Cir. 2009). Lafarga fails to overcome the presumption of reasonableness afforded his within-Guidelines sentence. We therefore conclude that the district court did not abuse its discretion in sentencing Lafarga.

## IV.

For the foregoing reasons, we affirm Lafarga's sentence.

**KAREN NELSON MOORE, dissenting.** Joaquin Lafarga argues that his sentence is procedurally unreasonable because the district court failed to acknowledge and address his argument for a downward variance based on the disparity in sentencing between districts that have the fast-track disposition program for 8 U.S.C. § 1326 cases and those that do not. Because I believe that the district court's failure to address Lafarga's nonfrivolous argument for a lower sentence constituted a plain error, I would vacate Lafarga's sentence and remand for resentencing.

In *United States v. Camacho-Arellano*, No. 07-5427, —F.3d—, 2010 WL 2869394, at *4 (6th Cir. July 16, 2010), this court recently held that district courts unquestionably have the power to vary categorically from the U.S. Sentencing Guidelines ("U.S.S.G.") based on the fast-track disparity. As a result, Lafarga is challenging on appeal the district court's failure to consider what has proven to be a nonfrivolous argument for a below-Guidelines sentence, and, in order to withstand appellate review, a district court is "normally" expected to "explain why [it] has rejected" any "nonfrivolous reasons for imposing a different sentence." *Rita v. United States*, 551 U.S. 338, 357 (2007); *see United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) ("When a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." (internal quotation marks and alterations omitted)); *United States v. Recla*, 560 F.3d 539, 547 (6th Cir. 2009) (same).

Assuming, as the majority concludes, that our review is for plain error, the question that remains is whether the district court's failure to address Lafarga's nonfrivolous, fast-track disparity

argument rises to the level of an error that "affected [Lafarga's] substantial rights" as well as the "fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted). I believe that it does, and I find instructive the recent decision in *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010).[3] In *Wallace*, we reiterated that *Vonner* made clear that this court affords extreme deference to the sentencing court under plain-error review and that the sentencing court is not required to "'give the reasons for rejecting any and all arguments by the parties for alternative sentences.'" *Wallace*, 587 F.3d at 804 (quoting *Vonner*, 516 F.3d at 387). The critical inquiry in determining whether an explanation for a sentence is sufficient is "whether 'the record makes clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and 'took them into account' in sentencing him." *Vonner*, 516 F.3d at 387 (quoting *Rita*, 127 S. Ct. at 2469, alteration omitted). Applying this standard, the panel in *Wallace* determined that the district court's "failure to consider [the defendant's] argument that she received a longer sentence than [her co-conspirator], even though he played a much larger part in the conspiracy," *Wallace*, 587 F.3d at 802, amounted to plain error because there was nothing in the record to "'make[] clear that the sentencing judge considered the evidence and arguments,'" *id.* at 805 (quoting *Vonner*, 516 F.3d at 387 and *Rita*, 551 U.S. at 359) (alteration in original).

---

[3]*Wallace* is an applicable published opinion that explicitly distinguishes *Vonner*, and it is therefore precedent that binds this panel.

Contrary to the majority's conclusion, and in line with *Wallace*, I do not believe that the standard set forth in *Rita* and *Vonner* has been satisfied in the instant case. The district court's failure to address Lafarga's argument amounts to an obvious error for several reasons. Most importantly, there is nothing in the record to indicate that the district court even comprehended, let alone considered, Lafarga's nonfrivolous fast-track argument. After Lafarga argued in open court for a variance based on the absence of the fast-track program—an argument that had also been raised in Lafarga's sentencing memorandum—the prosecutor interjected "to . . . address th[e] point[]." Dist. Ct. Dkt. Doc. ("Doc.") 40 (Sent. Hr'g Tr. at 4). Unfortunately, the prosecutor then proceeded to discuss only Lafarga's criminal history and shifted attention away from the disparity argument. From that moment on, there was not "even a cursory mention" of the fast-track facet of Lafarga's request for a variance. *See Wallace*, 597 F.3d at 804. Admittedly, the district court stated that it "read the [sentencing] memorandum, and [it] underst[ood] all that," Doc. 40 (Sent. Hr'g Tr. at 7), but the majority simply infers from this one statement that the district court understood Lafarga's claim and ignores the fact that the district court's statement came immediately after Lafarga's argument for a lesser sentence based on family circumstances. The "understanding" to which the district court plainly referred was entirely unrelated to the fast-track argument—the district court was focused on whether a lesser sentence was justified based on the fact that Lafarga's life in Mexico was apparently difficult and that many of his children are U.S. citizens.

Given that the district court never once even mentioned Lafarga's fast-track argument, I strongly disagree with the majority's conclusion that "it is evident that the court carefully considered

Lafarga's request." Maj. Op. at 5. This conclusion is unsupportable and is based on nothing more than pure speculation. Indeed, I believe it impossible to conclude that the district court "carefully considered" Lafarga's argument when the district court never even mentioned the argument that it purportedly considered. As explained in *Wallace*, "[n]one of [our cases] . . . indicate[] that this Court should affirm a sentence when no part of the record makes clear that the district judge even understood Defendant's argument." *Wallace*, 597 F.3d at 806 (collecting cases that affirm on plain-error review). The record here is totally lacking.

My belief that a remand is required is further buttressed by the fact that Lafarga's argument for a variance was not a "straightforward, conceptually simple" legal argument of the type that a district court is not required to address in depth. *See, e.g.*, *Rita*, 551 U.S. at 356; *United States v. Simmons*, 587 F.3d 348, 361–62 (6th Cir. 2009); *Vonner*, 516 F.3d at 388. Prior to *Camacho-Arellano*, there was no explicit statement from this circuit that district courts were even entitled to consider the fast-track disparity in sentencing illegal-reentry defendants. *See Camacho-Arellano*, 2010 WL 2869394, at *4 (discussing the confusion in the circuit); *see also United States v. Roberston*, 309 F. App'x 918, 924 (6th Cir. 2009) (unpublished opinion) (explaining that an argument for a lower sentence is not "conceptually simple" when it is "more specific and complex than a general § 3553(a) variance argument"); *cf. Simmons*, 587 F.3d at 362 (noting that the defendant's argument for a variance based on the crack-cocaine disparity was not complex because it was a "straightforward legal argument" that was "routinely made," and "the sentencing judge was no doubt familiar with [the] line of reasoning"). And, as a result, the contours of the law in this

circuit with respect to fast-track disparities at the time of Lafarga's sentencing were unclear, entirely undeveloped, and in need of cautious consideration. The complexity and novelty of the argument that Lafarga presented to the district court is further evidenced by the fact that there continues to be a circuit split on whether district courts can vary based on the fast-track disparity. *See Camacho-Arellano*, 2010 WL 2869394, at *5–6. Lafarga's argument is simply unlike those purely legal arguments that panels of this court have held do not require a detailed response.

The conclusion that a remand is required is also supported by the fact that Lafarga did not merely raise this particular argument for a lower sentence "in passing" or as one of numerous arguments. *Cf., e.g, United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008); *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007); *United States v. Hamid*, 227 F. App'x 475, 478–79 (6th Cir. 2007) (unpublished opinion). Instead, Lafarga raised *two* sentencing-related arguments, and he raised them both prior to and during the sentencing hearing. Finally, my belief that a remand is necessary is supported by the fact that the district court's general justification for Lafarga's sentence under 18 U.S.C. § 3553(a) was lacking. The district court failed to discuss in depth any of the 18 U.S.C. § 3553(a) factors, merely concluding that it had "considered the advisory guidelines and 18 USC, Section 3553(a)," Doc. 40 (Sent. Hr'g Tr. at 11). The cases where this circuit has held that the failure to consider or respond to a defendant's argument does not amount to plain error have included a discussion of the relevant sentencing factors to an extent simply not present in the record here. *See, e.g., United States v. Phillips*, 516 F.3d 479, 489 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006).

In sum, I would conclude that the district court's "failure to even so much as acknowledge" Lafarga's argument "constitutes an error that was obvious or clear," *Wallace*, 597 F.3d at 806, and that the instant case does not fall within the boundaries of any of the apparent exceptions to the district court's duty to acknowledge and address a nonfrivolous argument. Furthermore, for the reasons set forth in *Wallace*, I would conclude that the district court's failure to comply with 18 U.S.C. § 3553(c) and "state in open court the reasons for its imposition of the particular sentence" affected Lafarga's substantial right to appellate review as well as the fairness, integrity, or public reputation of judicial proceedings. *See Wallace*, 597 F.3d at 807 (citing *United States v. Blackie*, 548 F.3d 395, 402 (6th Cir. 2008)). Lafarga has thus met the test for plain error, and a remand is required.

Because I believe in order to resolve this case properly we must remand for resentencing, I would refrain from reaching Lafarga's argument that his sentence is substantively unreasonable. But I offer a few observations as to the majority's resolution of this claim. As an initial matter, I agree with the premise of Lafarga's argument—that an enhancement under U.S.S.G. § 2L1.2 predicated on a "stale" conviction could result in a substantively unreasonable within-Guidelines sentence. Stated otherwise, I can envision circumstances in which the district court's application of the Guidelines would not result in a proper sentence under 18 U.S.C. § 3553(a) because U.S.S.G. § 2L1.2(b) itself does not appropriately reflect the values embodied in 18 U.S.C. § 3553(a). Thus, I do not believe that the fact that the district court "simply applied the relevant Guideline," Maj. Op. at 10, obviates our obligation to determine whether, in a particular case, the Guideline properly

reflects the § 3553(a) factors. In fact, although the majority fails to acknowledge this point, two other circuits have credited the argument that in some cases the staleness of a predicate felony will require deviation from the illegal-reentry Guideline. *See United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009); *United States v. Chavez-Suarez*, 597 F.3d 1137, 1138 (10th Cir. 2010) (agreeing with *Amezcua-Vasquez*).

This circuit has not yet addressed Lafarga's argument in a published opinion, but in *United States v. Brissett*, No. 09-4244, 2010 WL 1640934, at *5 (6th Cir. Apr. 23, 2010), a panel assumed without deciding that the "Ninth and Tenth Circuits [were] correct in holding that the staleness of an enhancing conviction can theoretically render a within-Guidelines sentence substantively unreasonable." Ultimately, the panel concluded while "sympathetic circumstances surrounding a defendant's underlying conviction might conceivably require mitigation of an enhancement under § 2L1.2(b)—as opposed to permitting it, which they certainly do," *Brissett*, 2010 WL 1640934, at *5, the defendant there had failed to make the required showing.

I believe that the approach taken in *Brissett* is the proper approach in this case as well, and if I were to reach Lafarga's substantive-reasonableness claim, I would assume that the staleness of a conviction could, in appropriate circumstances, require a below-Guidelines sentence. As in *Brissett*, however, I believe that Lafarga's case is simply not such a case. Although it is true that Lafarga's predicate felony was too old to be counted in the Guidelines' criminal-history calculation, which certainly weighs heavily in favor of a finding that the sixteen-level Guidelines enhancement resulted in a sentence greater than necessary to serve the purposes of sentencing, I find it highly

significant that Lafarga never ceased his criminal activity after that predicate conviction. In fact, as the district court noted, Lafarga has shown continual disrespect for the laws of the United States by repeatedly entering the country without permission and by repeatedly committing crimes—albeit ones that varied in severity.

In conclusion, I would hold that the district court's failure to address Lafarga's request for a lower sentence based on the fast-track disparity resulted in a procedurally unreasonable sentence and would **REMAND** the case to the district court for resentencing. For the foregoing reasons, I must dissent.