_____NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0244n.06
Filed: March 31, 2009

No. 08-5047

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FRANKIE WELCH, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN and COOK, Circuit Judges; and WATSON, District Judge.[*]

WATSON, District Judge. Defendant Frankie Welch appeals his 292-month sentence for possessing over 50 grams of cocaine base with an intent to distribute. He makes two arguments: (1) that the district court erred by failing to make a factual finding that defendant's statement concerning his prior drug activity was made within the context of a cooperation agreement with the government, and (2) that his sentence is substantively unreasonable. For the reasons given, we affirm.

**I.**

The Presentence Investigation Report ("PSR") sets forth the undisputed facts:

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

On January 27, 2006, special agents of the West Tennessee Drug Task Force served a search warrant at the residence of Frankie and Tonya Welch, located at 680 South Bells Street, Alamo (Crockett County), TN. Agents present during the search were Special Agent-in-Charge (SAC) Donny Blackwell, Assistant Special Agent-in-Charge Danny Lewis, Special Agent (SA) Eric Uselton, SA Paul Thomas, and SA Jay Morris. Upon arrival at the residence, SAC Blackwell approached the home alone and knocked on the door underneath the carport. Frankie Welch answered the door and greeted SAC Blackwell. The other agents approached at that time, announced their purpose, and proceeded to secure the residence. Other persons present in the home were identified as Tonya Welch and her mother.

After the residence was secured, Frankie Welch was brought into the living room, where he was advised of his Miranda Rights. After being so advised, the defendant agreed to talk and to cooperate with case agents. Mr. Welch volunteered that agents would find "some stuff" in a chest of drawers located in the master bedroom. Upon opening one of the drawers, agents found a large amount of a suspected controlled substance, later positively identified as cocaine base (crack cocaine). The crack cocaine was packaged for resale into sixteen (16) small plastic bags, which were then placed into one (1) larger plastic bag. Also found in the same drawer were two (2) plastic film canisters, both containing quantities of crack cocaine, and a stack of U.S. currency. Located in another drawer was a handgun, specifically identified as a fully-loaded Ruger, model P95, 9mm semi-automatic pistol, serial no. 313-55969, as well as two (2) extra magazines, both fully-loaded. Directly beside the handgun was a large roll of U.S. currency. A cellophane wrapper containing five (5) tablets, yellow in color, was also found in one of the drawers. A Uniden scanner was located elsewhere in the master bedroom and a significant amount of assorted ammunition was found in a master bedroom closet. The total amount of U.S. currency seized from the master bedroom was $9,320.00. An additional $402.00 in currency was recovered from another bedroom.

All of the suspected controlled substances seized from the defendant's residence on January 27, 2006, were submitted to a TBI Crime Laboratory for quantitative analysis. Results of the laboratory analysis positively identified the submitted exhibits as cocaine base, with a total net weight of 81.4 grams. The aforementioned five (5) yellow tablets were identified as a Schedule IV controlled substance, diazepam.

Later that same day, after being advised of his Miranda Rights for a second time, Mr. Welch voluntarily agreed to answer case agents' questions in an interview setting. Present during the interview were the defendant, SAC Blackwell, and SA Uselton. During that interview, Mr. Welch claimed ownership and full responsibility for all of the controlled substances, as well as the firearm, ammunition, and currency, found in his residence. Mr. Welch provided agents with information as to where and how he had acquired those items. The defendant also voluntarily answered questions and provided information regarding the extent of his involvement in trafficking of crack cocaine over a substantial period of time. When asked how often he purchased crack cocaine (for resale) and how much of that substance he would purchase at a time, Mr. Welch specifically replied that he bought "a quarter of a bird" (slang for kilogram), or nine "juices" (slang for ounces) of crack "every week." He reported that he had two (2) primary suppliers for crack cocaine and that he typically paid approximately $5,800.00 for each quarter "bird" (kilogram). When asked how long he had been purchasing and dealing in that quantity of crack, the defendant replied that he had been doing so for "three (3) or four (4) years." Mr. Welch reported that approximately ten (10) street-level dealers bought crack cocaine from him on a regular basis. He said that most of those dealers usually purchased their crack in "eight-ball" (3.5 grams) and/or one-fourth ounce quantities. The defendant named at least one dealer to whom he often sold crack in "juice" (ounce) quantities.

On October 16, 2006, the grand jury indicted Welch under 21 U.S.C. § 841(a)(1) for possessing over fifty grams of cocaine base with intent to distribute. Welch pleaded guilty to the charge on October 11, 2007. There was no plea agreement other than an oral agreement that Welch reserved the right to appeal the district court's denial of his motion to suppress.

The probation officer issued the PSR on November 30, 2007. The probation officer used the statements Welch made during his interview to calculate his relevant conduct. Hence, the probation officer began with the 81 grams of cocaine base seized from Welch's residence, then added 39 kilograms of crack based upon Welch's admission that he had purchased and distributed 250 grams each week for three to four years. In accordance with United States Sentencing Guidelines

("U.S.S.G.") § 2D1.1(c)(1), Welch's offense level started at 38 because his relevant conduct involved more than 4.5 kilograms of cocaine base. Two points were added for the firearm, and two points were subtracted for acceptance of responsibility, resulting in a total offense level of 38. Welch had not previously been convicted of a felony. Nonetheless, his misdemeanor convictions resulted in six criminal history points and a criminal history category of III. The Guidelines range for offense level 38 and criminal history category III is 292-365 months.

Welch filed a position paper regarding sentencing factors in response to the PSR on January 3, 2008. In the position paper, Welch stated he did not dispute the amounts of narcotics found at his house on January 27, 2006. Welch did dispute the 39 kilograms attributed to him on the basis of his statement to officers, asserting his statement to the Task Force agents was "made in the context of cooperation." Moreover, Welch argued his statement should have been considered as a "proffer" and not used as a basis for an increased sentence. In addition, he disputed the firearm enhancement and maintained he was entitled to the third point for acceptance of responsibility. He also objected to the assessment of one criminal history point, arguing the conviction in question occurred more than ten years before the offense conduct. Furthermore, Welch urged the district court to impose a sentence of ten years, representing the statutory minimum based on the quantity of crack cocaine found at his house.

The district court conducted the sentencing hearing on January 7, 2008. During a sealed bench conference, Welch's counsel averred:

> But it's our position, as we stated, that his statement later that day and his efforts there at the house would be properly considered in the nature of a proffer. There is no protection of the proffer letter. He didn't even have counsel. There was no federal charge pending, obviously, at that time. State charges had not even been filed because it was a search warrant, not an arrest warrant.

During the hearing, Welch's attorney emphasized that Welch had a strong work history and was employed full time. Counsel acknowledged that Welch had been advised of his *Miranda* rights before he made his statement to the Task Force agents. Defense counsel also conceded that the Probation Officer had accurately calculated the Guidelines range on the basis of Welch's statement. Welch's attorney again urged the district court to impose a 120 month sentence based upon the statutory mandatory minimum for the 81 grams of crack found at Welch's home. Defense counsel characterized the recommended Guidelines range of 292-365 months as "beyond the pale" and "shocking to the conscience," asserting that Welch, who had no prior felony convictions, was not like defendants who typically face a sentence in that range. Lastly, Welch's attorney again objected to the firearm enhancement.

The district court overruled Welch's objections to the one criminal history point and the firearm enhancement. Following Welch's allocution, the district court examined the statutory factors individually.

First, the district court considered the Guidelines range of 292 to 365 months. The district court recognized that the Guidelines were only one of several factors to be considered. Second, the district court examined Welch's history and characteristics, noting that this was Welch's first felony,

albeit a serious one. Third, the district court noted the nature and circumstances of the offense, concluding that Welch was a drug kingpin given the large scope of his operation. With respect to this factor, the district court also considered the impact of Welch's crack dealing on the community. Fourth, the district court examined the availability of alternative sentences and found that incarceration was the only sentence available for the offense. Fifth, the district court noted the need to avoid sentencing disparities, and concluded that other defendants dealing in large quantities of crack cocaine have received similarly long sentences. Sixth, the district court considered the need for deterrence. Seventh, the district court acknowledged the need to impose a sentence that is not greater than necessary. Eighth, the district court examined whether the Guidelines range was appropriate and concluded Welch's lack of a prior felony justified a sentence far lower than the maximum. Ninth, the district court noted it was taking into account all of Welch's relevant conduct, including the conduct to which Welch admitted in his statement to the Task Force agents.

Considering all of these factors, the district court concluded a sentence at the lowest end of the recommended Guidelines range was appropriate. The district court therefore sentenced Welch to a term of 292 months imprisonment. Judgment was entered the same day, and Welch timely appealed.

## II.

Welch's appeal raises two issues. First, he argues that the district court erred by failing to make a specific factual finding as to whether his statement to agents concerning his prior drug

activity was made within the context of a cooperation agreement with the government. Second, he challenges the substantive reasonableness of his sentence. We address each in turn.

**A.**

Welch argues the district court erred by failing to make a factual finding as to whether he made his statement to the Task Force agents in the context of a cooperation agreement with the government. "Whether a district court is required to make factual findings on the record is a question of law subject to *de novo* review." *United States v. Vandeberg,* 201 F.3d 805, 809 (6th Cir. 2000).

Welch refers to U.S.S.G. § 1B1.8, which provides:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

U.S.S.G. § 1B1.8(a).

The record lacks any suggestion that Welch made his statement to the Task Force agents pursuant to a cooperation agreement with the government. Rather, the record reflects that the Task Force agents twice informed Welch of his *Miranda* rights, which would have included a warning that anything he said could be used against him. Welch then voluntarily gave his statement. At

sentencing, Welch asserted that the statement should have been considered *as if* it had been made pursuant to a cooperation agreement, not that such an agreement actually existed. Welch's attorney conceded that no cooperation agreement existed:

> But it's our position, as we stated, that his statement later that day and his efforts there at the house would be properly considered in the nature of a proffer. There is no protection of the proffer letter. He didn't even have counsel. There was no federal charge pending, obviously, at that time. State charges had not even been filed because it was a search warrant, not an arrest warrant.

In these circumstances, when a finding was neither requested nor supported by the record, the district court did not err.

**B.**

Welch also claims his 292-month sentence counts as substantively unreasonable, a matter that we review using a deferential abuse-of-discretion standard. *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008). "'A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor.'" *United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008) (quoting *United States v. Conaster*, 514 F.3d 508, 520 (6th Cir.), *cert. denied,* 129 S.Ct. 450 (2008)). The district court's goal is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a). 18 U.S.C. § 3553(a); *Presley*, 547 F.3d at 630-31. This Court affords a properly

calculated within-Guidelines sentence a rebuttable presumption of reasonableness. *Haj-Hamed*, 549 F.3d at 1025.

Welch contends his 292-month sentence is substantively unreasonable for a first felony conviction. The district court considered and rejected this argument. The district court also addressed the § 3553(a) factors. Nonetheless, Welch insists his sentence exceeds what is necessary to achieve the statutory goals. He suggests that the district court relied too heavily on the Guidelines, so-called "guidelineitus." *See United States v. Phinazee*, 515 F.3d 511, 522 (6th Cir. 2008) (Merritt, J., dissenting). Welch asks us to remand with instructions to resentence based upon a Guidelines calculation which would take into account the quantity of drugs found in his home but exclude the 39 kilograms of crack cocaine he admitted buying and selling in his statement to the Task Force agents.

The sentence enjoys a presumption of reasonableness, which Welch does not rebut. He does not argue that his sentence was arbitrary, or that the district court based the sentence on impermissible factors or failed to consider relevant factors. He concedes that the district court properly calculated the Guidelines range based upon his admitted purchase and sale of 39 kilograms of crack cocaine. Welch does little to explain how the Guidelines range is unreasonable in this instance—he merely characterizes it as such. In essence, he urges us to compel the district court to resentence him in a manner that would ignore the conduct to which he voluntarily admitted in his statement to the Task Force agents. But Welch has never disputed the accuracy of the amount of crack cocaine to which he referred in his statement. Welch's sentence reflects the large quantity of

drugs he introduced to his community over a period of years. The mere fact that Welch could possibly have obtained a better deal if he had consulted with an attorney before making his statement should not shield him from punishment for three to four years of large-scale drug dealing. Viewing the totality of the circumstances, the district court did not abuse its discretion by sentencing Welch at the low end of the applicable Guidelines range, notwithstanding that this was his first felony conviction.

## III.

Because the district court did not err by failing to make a specific factual finding as to the existence of a cooperation agreement and because the 292-month is not substantively unreasonable, we affirm.