NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0261n.06

No. 23-3995

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 23, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| WILLIE PRATT, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: SUTTON, Chief Circuit Judge; CLAY and THAPAR, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Willie Pratt was charged with conspiracy, possession, and intent to distribute various drugs, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), 21 U.S.C. § 846, and 18 U.S.C. § 2. The indictment also contained a penalty enhancement under 21 U.S.C. § 841(b)(1)(C) for death or serious bodily injury resulting from the use of a controlled substance. A jury found Defendant guilty, and the district court sentenced Defendant to 470 months' imprisonment. Defendant only challenges his conviction on the penalty enhancement for Count One and his sentence, and does not challenge his convictions on the other counts. For the reasons that follow, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

### A. Factual Background

The events of this case primarily concern three individuals in Rocky River, Ohio: Kristopher Ford, Lindsey Byrnes, and Defendant. Byrnes and Ford were friends who, as of 2021,

had known other for a few years. On October 30, 2021, Ford called Byrnes and asked her to pick him up. Upon reaching Ford, Byrnes noticed that he looked unwell and appeared to be suffering from withdrawal. Ford told Byrnes that he needed to run some errands, including to make a purchase of drugs. Byrnes then drove Ford to a Dollar General, and after arriving at the store, Ford went to a home located next to the Dollar General. Ford purchased drugs at the home from an individual whom Byrnes later identified at trial as Defendant. Prior to meeting with Defendant, Ford texted Defendant, "80 girl, 60 boy"—meaning one gram each of cocaine and fentanyl. Trial Tr., R. 176, Page ID #2124.

After Ford purchased the drugs, Byrnes drove Ford to Ford's mother's house. While driving, Ford began to consume some of the drugs, one of which was a white powder and the other a tan grayish substance. After visiting Ford's mother's home, Byrnes drove Ford to Byrnes' apartment, where Ford continued to consume the drugs he had purchased from Defendant. Ford began to exhibit signs of withdrawal later that night, so Byrnes provided him with a dose of Xanax and a dose of Adderall. At around 9:00 A.M. the following day, Byrnes woke up and noticed that Ford was not breathing, and had vomit and foam coming from his mouth. Byrnes then called 911, and paramedics, police, and a coroner arrived shortly thereafter.

The Rocky River Police Department then began to investigate. They extracted Ford's cellphone and discovered communications between Ford and Defendant. One of the detectives assigned to the case, Mike Asbury, described the communications as "typical of a conversation between a drug addict and a drug dealer" because the conversation was "[v]ery short and sweet, straight to the point, asking location." Trial Tr., R. 177, Page ID #2305. Detective Asbury further explained that the conversation between Ford and Defendant involved "a request for cocaine and heroin." *Id.* at Page ID #2306.

On November 1, 2021, Detective Asbury organized a controlled buy with Defendant. Detective Asbury specifically used Ford's phone to conduct the transaction, in an attempt to make Defendant think he was communicating with Ford. Defendant then used an accomplice to deliver the drugs. Police apprehended the accomplice, and according to Detective Asbury, the accomplice stated that he was dropping off the drugs for Defendant. Detective Asbury later interviewed Defendant, where Defendant admitted to selling heroin, fentanyl, and cocaine.

### B. Procedural History

On September 15, 2022, a grand jury returned an indictment charging Defendant with four counts of (1) distributing cocaine and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (2) conspiracy to possess with intent to distribute mixtures containing cocaine, heroin, acetyl fentanyl, and fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C); (3) possession with intent to distribute mixtures containing cocaine, heroin, acetyl fentanyl, and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2; and (4) possession with intent to distribute mixtures containing cocaine and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Additionally, Count (1) contained a penalty enhancement under 21 U.S.C. § 841(b)(1)(C) based on Ford's overdose death.

After the case proceeded to trial and the government rested its case, Defendant moved for judgment of acquittal, which the district court denied. Defendant did not present a case in his defense. The jury subsequently found Defendant guilty of all charges and the Count One sentencing enhancement.

Probation prepared a presentence report, which found that Defendant's base and total offense levels were 43 because (1) the offense resulted in death, and (2) Defendant had a previous felony offense for drug trafficking. The PSR also scored Defendant's criminal history at VI

because of Defendant's long criminal history (including multiple convictions for burglary, drug trafficking, and committing crimes while on supervision) and because Defendant is a career offender based on two prior drug trafficking offenses. That placed Defendant's advisory guidelines sentence at life in prison.

At Defendant's sentencing hearing, the district court explained that Cuyahoga County, Ohio, has faced severe and growing overdose deaths due to fentanyl. The court further stated that it had received three incident reports from Defendant's prior periods of incarceration, including "possession of drugs, shanks, other matters regarding [Defendant]." Sentencing Tr., 183, Page ID #2630. The court went on to ask Defendant's counsel if Defendant "knows that the drugs that he's distributing could very well lead to the death of addicts or people addicted to drugs, right?" *Id.* at Page ID #2634. Counsel responded, "I would suspect he does, Judge." *Id*. This led the court to state:

> I'll tell you what's on my mind here. What evidence do we have, including [Defendant's] behavior in custody, both on this case and other cases, what evidence do we have in this record that this individual will ever, ever, if he goes back in the community, ever live a law-abiding life . . . after he's had probation on numerous occasions, after he's been in prison and he's acted out in prison, not just federal.

*Id.* The court went on to note:

> I am still sitting here, because this is serious. I don't impose life without taking it extremely seriously. It's a heavy, heavy case. But, . . . [Defendant] comes as close as can be to warranting life, because . . . he is callous. He's shown throughout this case his attitude and demeanor. He treats this matter trivially, with all due respect, and that's my view.

*Id.* at Page ID #2643.

The court also noted that Defendant had not taken advantage of programming available during pretrial confinement, and that the median length of imprisonment for defendants with

similar offense levels and criminal histories was 470 months. After reviewing the § 3553(a) factors and considering the need for deterrence, the court imposed a term of imprisonment of 470 months. The court explained that it granted "a variance from life" because "life may be greater than necessary. This 470 months, if the defendant comports himself properly in the BOP or earns credit for good time, he may have some period of time when he's released to enjoy time back in the community at some point in the distant future." *Id.* at Page ID #2671, 2673–74.

Defendant now appeals his sentence and the district court's denial of his motion for judgment of acquittal.

## II.    DISCUSSION

### A.  Standard of Review

"We review a district court's denial of a motion for judgment of acquittal de novo, assessing 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This requires us to "draw all reasonable inferences in support of the jury's verdict and [to] reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id.* (quotation marks and citation omitted). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Lowe*, 795 F.3d 519, 522–23 (6th Cir. 2015) (citation omitted).

"We review a sentence's procedural reasonableness under the abuse-of-discretion standard." *United States v. Johnson*, 79 F.4th 684, 705 (6th Cir. 2023) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). "An abuse of discretion occurs if a court commits a 'significant

procedural error,' such as the improper 'calculation of the advisory sentencing Guidelines.'" *Id.* (first quoting *Gall*, 552 U.S. at 51; and then quoting *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009)). However, if a defendant fails to raise procedural objections before the district court, this Court reviews only for plain error. *United States v. Haj-Hamed*, 549 F.3d 1020, 1024 (6th Cir. 2008). "To show plain error, a defendant must show (1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010). With respect to substantive reasonableness, we review for abuse of discretion. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long. . . . Needful to say, this is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *Id.*

## B. Analysis

### 1. Motion for Judgment of Acquittal

Defendant appeals the district court's denial of his motion for judgment of acquittal, but only with respect to Count One's penalty enhancement. Count One charged Defendant with distributing cocaine and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), with a penalty enhancement for death or serious bodily injury resulting from use of a controlled substance. In order to reach a conviction on the penalty enhancement, the government was required to prove two elements at trial: (1) "knowing or intentional distribution of [a controlled substance]," and (2) "death caused by ('resulting from') the use of that drug." *Burrage v. United States*, 571 U.S. 204, 210 (2014) (quoting § 841(b)(1)(C)). To prove the second element, the government must show that "use of the drug must have been a but-for cause of the victim's death

or injury. But-for causation exists where use of the controlled substance 'combines with other factors to produce' death, and death would not have occurred 'without the incremental effect' of the controlled substance." *United States v. Volkman*, 797 F.3d 377, 392 (6th Cir. 2015) (quoting *Burrage*, 517 U.S. at 211).

Defendant only challenges the second element of the *Volkman* test. He argues that the government failed to prove this element because "(1) he did not sell the drugs that caused Ford's death; and (2) cocaine and fentanyl were not the but-for cause of Ford's death." Appellant Br., ECF No. 49, 25. This argument is unavailing.

The evidence at trial was more than sufficient to establish but-for causation. Byrnes explained to the jury how she transported Ford to Defendant's location, saw Ford purchase drugs from Defendant, watched as Ford consumed the drugs purchased from Defendant, and later found Ford dead in her apartment. She further testified that Ford did not leave the apartment after they returned from the drug purchase, and there was nothing to suggest that he had left the apartment in the middle of the night. Byrnes' daughter, who was also at the apartment that night, also testified that Ford did not leave the apartment. The government also presented an expert witness who testified that, in his opinion, the but-for cause of Ford's death was a combination of fentanyl and cocaine—the same drugs Ford purchased from Defendant. The expert testified that the fentanyl present in Ford's blood was at "a lethal level," and that the mixture of cocaine (a stimulant) and fentanyl (a depressant) resulted in Defendant's death. Trial Tr., R. 176, Page ID #2000. Furthermore, the expert explained at length why other drugs were not responsible for Ford's death; for example, the expert testified that the levels of alcohol and prescription drugs in Ford's system were too low to be lethal.

The combination of this evidence leads to a logical conclusion. Ford received drugs from Defendant, ingested those drugs, and died as a result of the toxic combination of a powerful stimulant and a powerful depressant. This is more than sufficient to demonstrate but-for causation.

Defendant provides a number of arguments in response. None are persuasive. First, Defendant argues that Byrnes' testimony was unreliable and cannot be used to establish but-for causation. But it is not the job of this Court to "consider the credibility of witnesses" when reviewing a district court's denial of a motion for judgment of acquittal. *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (citation omitted). Second, Defendant presents alternative theories as to how Ford obtained the drugs that killed him. Defendant theorizes, for example, that because there was alcohol in Ford's system, and because Ford did not drink in front of Byrnes, "he must have left her apartment while she was sleeping to gain access to alcohol and he likely obtained more fentanyl and cocaine from a different dealer. He could have even obtained these substances from someone residing in her apartment building." Appellant Br., ECF No. 49, 28–29. Yet Defendant provides no evidence to support these hypotheticals. And when viewing the evidence as a whole, we must view it "in the light most favorable to the prosecution." *Vichitvongsa*, 819 F.3d at 270 (citation omitted). Thus, in providing this deference to the government's evidence, we cannot merely accept Defendant's unsubstantiated theories and conjectures. Finally, Defendant argues that the government's expert failed to establish but-for causation. Yet this argument merely highlights minor elements of the expert's testimony that are helpful for Defendant, while ignoring the vast quantity of evidence provided by the expert that demonstrates but-for causation.

In summary, the government has met the required elements to prove the 21 U.S.C. § (b)(1)(C) penalty enhancement. Therefore, the district court did not err in denying Defendant's motion for judgment of acquittal.

## 2. Sentence

Defendant next argues that the district court imposed a procedurally and substantively unreasonable sentence. He asserts that the sentence was procedurally unreasonable because the district court failed to adequately explain the reasons behind imposing the sentence for Count One. He also contends that the sentence was substantively unreasonable because the 470-month prison term was "arbitrarily selected." Appellant Br., ECF No. 49, 33.

At sentencing, Defendant failed to object before the district court on procedural grounds. We therefore review Plaintiff's procedural reasonableness challenge for plain error. *Haj-Hamed*, 549 F.3d at 1024.

There is little to suggest that the district court plainly erred with respect to procedural reasonableness. The district court explained its decision based on the § 3553(a) factors, noting (1) the nature and circumstances of the offense favored a higher sentence, especially considering Ford's death; (2) Defendant's history and characteristics, including his extensive criminal history, disruptive behavior while in custody, and difficult childhood; (3) the need to protect the public given Defendant's long criminal history and unwillingness to change his behavior; and (4) a general need for deterrence. The district court also fully explained that it was granting a variance from a life sentence because of Defendant's age and the hope that at some point in the "distant future" Defendant may be able to redeem himself. Sent'g Tr., R. 183, Page ID #2673–74. This lengthy explanation was more than sufficient to adequately apprise Defendant of the reasons behind the length of the sentence.

The district court also did not abuse its discretion with respect to substantive reasonableness. A within-Guidelines sentence is presumed reasonable. *United States v. Elmore*, 743 F.3d 1068, 1072 (6th Cir. 2014). In this case, the district court imposed a *below*-Guidelines

sentence, as the presentence report scored Defendant's criminal history at VI and total offense level at 43, which resulted in a Guidelines range of life imprisonment. The presumption of reasonableness thus applies to this case. And Defendant provides little reason to depart from that presumption. He vaguely asserts that the "district court selected the sentence arbitrarily," because the 470-month sentence was not truly a variance from life imprisonment. Appellant Br., ECF No. 49, 36–37. It is true that Defendant will be very old when he is released from prison. But Defendant provides no case law to suggest that release from prison at an old age is categorically the same as a life sentence, or that such a variance is arbitrary. Furthermore, it should be emphasized that the district court was not obligated to impose a variance; instead, the court would have been well within its prerogative to have simply applied the Guidelines range and imposed a life sentence on Defendant.

In summary, the district court's sentence was neither procedurally nor substantively unreasonable.

### III. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.